# Wells-Elkhorn Coal Company v. Moore, Guardian, et al.

(Decided December 17, 1926.)

## Appeal from Floyd Circuit Court.

1.  Mines and Minerals—Petition in Suit for Damages from Careless Coal Mining Held Sufficient, Petition Properly Charging and Suit Not Being Prematurely Brought.—Petition in suit for damages from careless mining of coal held sufficient, mining company being charged with so mining coal as to cause roof to fall in and utterly destroy otherwise mineable coal, suit for such damages not being prematurely brought.

2.  Mines and Minerals—Assignee of Coal Mine Lease Held Not Liable for Coal Loss Through Waste Prior to Assignment.— Lessee of coal mine held not responsible for caving in of roof and consequent loss of coal in certain area, evidence overwhelmingly establishing that such loss occurred during time defendant's predecessor operated lease.

3.  Mines and Minerals—Lessor, in Action for Careless Coal Mining, Held Entitled to go to Jury on Amount Lost in Specific Area, Though Lessee's Testimony Indicated Large Coal Recovery.— Plaintiffs, in action for damages from careless coal mining, held entitled to go to jury on testimony that about 5,000 tons of coal were lost in certain area, though lessee showed over 90 per cent. recovery of coal from mining pillars, lessee being required if possible to exercise reasonable skill to make 100 per cent recovery.

4.  Mines and Minerals—Coal Loss in Specific Area Held for Jury, Though Lessee had Proved High Coal Recovery Therefrom and Major Damage was Ascribable to Lessor's Predecessor.—In action for damages from careless mining of coal, lessor held entitled to have loss sustained in certain area submitted to jury, though lessee showed high recovery percentage from coal pillars, and major portion of damage sustained was due to acts of lessee's predecessor.

5.  Mines and Minerals—$3,000.00 Verdict for Damages for Careless Mining of Coal Held Excessive in View of Evidence.—Verdict for $3,000.00 in action for damages for careless mining of coal being equivalent to royalty on 24,000 tons of coal held grossly in excess of loss proved.

6.  Trial—Instructions in Action for Careless Coal Mining, Assuming Lessee's Mining Methods Improper, Held Objectionable, there Being Sharp Issue on Fact.—Instructions in action for damages from careless mining of coal held objectionable because assuming lessee's mining methods were improper, such fact being in sharp issue.

B. F. COMBS and HAGER & STEWART for appellant.

MAY, ALLEN & MAYO for appellees.

Opinion of the Court by Judge Dietzman—Reversing.

On March 25, 1919, Robert Hays and his wife leased to F. B. Preston and others all the workable seams of coal in a described tract of land for the period of 15 years, or until all the coal was worked out, for which the lessees agreed to pay as royalty the sum of 12½ cents per ton of 2,000 pounds. There were certain other conditions in the lease not here pertinent, but there was nothing in the lease specifically requiring the lessees to mine the coal by any particular method. It is agreed by the parties, however, that there was an implied obligation on the part of the lessees to exercise reasonable skill and judgment in the mining and to mine the coal in a reasonably skillful manner. Shortly after this lease had been executed, it was assigned by the lessees to the Black Diamond Coal Company, which entered upon the premises, opened a mine, and operated it until October 20, 1920, a period of a little over five years. On this date they assigned the lease to the appellant, Wells-Elkhorn Coal Company, which operated the mine until September 12, 1923, when it sold the lease to the Lackey Mining Company, which is now operating it. The lessor, Hays, died in the fall of 1920, leaving as his heirs and distributees at law his widow and some infant children. The appellee, Kendall Moore, was appointed the administrator of his estate and the guardian of the infant children. In May, 1922, Moore, as administrator and as guardian, together with the widow and children, brought this suit against the appellant to recover damages for certain alleged careless mining on its part, whereby it was charged with having destroyed and totally and forever lost large quantities of the mineable coal of the mine. Moore as administrator later dropped out of the litigation. The appellees averred that the appellant had driven rooms and working places unusually wide without leaving sufficient support for the roof, had split the stumps and pillars and weakened the support of the roof, had provided a too small and defective system of chain pillars, and had "gobbed" slate and other refuse on both sides of the pillars. The answer was a traverse. On the trial, the appellees recovered a judgment in the sum of $3,000.00, from which this appeal is prosecuted.

There is no merit in the appellant's first contention that the petition was insufficient and the suit prematurely brought, because a careful reading of the petition as amended discloses that the appellees charged the appellant with so mining the coal as to cause the roof to fall in and utterly to destroy coal that would otherwise have been mineable. In the case of Mullins v. Dees, 124 S. W. 828, the proof showed that the lessee was operating the mine in such a way as to ruin it. He had taken out no coal from the mine except that which he obtained by drawing the ribs or supports between the rooms of the mine He had begun at the back of the mine and was doing what is called "taking out the stumps," and when he had done this there would not be enough to hold up the roof, the result being that the slate overhead would come down, rendering it impossible to work the mine any further, thus injuring it. We said:

"Mullins (the lessee) was a tenant for years; he had plainly committed waste. The thing wasted was the mine. The course he was pursuing would soon render it absolutely useless. He was not using the mine in the way contemplated by his lease, but was simply misusing and destroying the property."

We there held that the lessor had the right to cancel the lease. *A fortiori,* he would have the right to bring a suit for damages occasioned by such waste.

The second and third grounds urged for reversal are that the appellees' evidence is insufficient to support the verdict and that the verdict is excessive. We will consider these two grounds together. The areas of the mine about which the appellees are complaining in this suit are: (a) The first and second right entries; (b) the third, fourth, fifth and sixth right entries; and (c) the left entries from 1 to 8. Considering these in the order named, we find in area A that about half-way back from the main entry of the mine to the property line the roof has fallen in, thereby rendering the coal that was left in standing pillars beyond the fall inaccessible and in such shape as to be lost because not practically mineable, although appellant disputes this by an assertion that it can be reached by another entry driven from the side of the mountain. However, be that as it may, the evidence overwhelmingly establishes that this fall and consequent loss of the coal had occurred while the Black Diamond Mining

Company was operating the lease.    In 35 C. J. 997, it is written:

> "The assignee (of a lease) is not liable for breaches (of the covenants of the lease) occurring prior to the assignment in the absence of an agreement to the contrary."

No agreement to the contrary, express or implied, having been shown, the appellant cannot be held responsible for what the Black Diamond Mining Company did, or for the coal lost by any improper method of mining adopted by the latter in this area. The appellees fixed the amount of coal lost in this area as high as 5,000 tons, although is would seem that the great preponderance of the evidence does not establish a greater loss than 4,000 tons. But whatever the loss is, the appellant is clearly not responsible for it.

With regard to area B, the evidence shows that the Black Diamond Coal Company had driven these entries about half way from the main entry to the property line when it assigned the lease to the appellant, and the latter thereupon took up the work and completed the entries to the property line. It thereupon began the retreat work —that it, robbing the pillars on the way back to the main entry—and had completed this work on the third and fourth right entries and had about half completed it on the fifth and sixth right entries when it assigned the lease to the Lackey Mining Company. It is contended by the appellees that, due to the way the pillars were split and robbed, the mountain had creeped to such an extent as to result in a squeeze, whereby quite a quantity of coal was lost in these entries. They also complain of the way the pillars were "gobbed" by the piling of refuse and slate about them to such an extent as to render it impracticable ever to get the coal from them. Appellees' witness Combs did not discover any coal lost in the fifth and sixth right entries, but he did testify to about 5,000 tons lost in the third and fourth right entries. Appellant's testimony goes to show that it made a recovery of the coal in this area of over 90 per cent., and from this it argues that since the testimony is agreed that a recovery of 85 per cent is an excellent recovery, therefore it cannot be held responsible because it did not get more coal than it did. Of course the answer to this is that if by reasonably skillful methods in the mining of the coal, and by mining it

in a reasonably skillful manner, it could have made a 100 per cent recovery, it should make such a recovery, and that although the percentage of recovery it did make is potent evidence to show that it had mined this area in a reasonably skillful manner, it is not conclusive. There was evidence offered by appellees to show that high as was appellant's percentage of recovery in this area, it could have made a better recovery had it not unskillfully, as appellees say, mined the coal and gobbed the pillars. Clearly the appellees were entitled to go to the jury on this testimony. But the appellees did not satisfactorily prove a greater loss of coal in this area than 5,000 tons.

With regard to the C area, it is beyond dispute that by far the major portion of the loss claimed by the appellees here due to falls in the roof, squeezes, "gobbing" of pillars, and the like, was occasioned by the operation of the Black Diamond Mining Company, for which, as stated, the appellant is in no manner responsible. The latter mined but a small portion of this area reached by these entries, which area so mined by it more or less abutted on the main entry. Here, too, the appellant made a very high recovery of the coal, again exceeding 90 per cent of the recoverable coal. However, the observations which we made with regard to the B area in connection with appellant's argument based on the percentage of recovery are applicable here. Therefore the appellees were entitled to have this part of their case also submitted to the jury. However, it is obvious that the amount of coal lost by the appellant, if any, in this area, by no means measures up to any such tonnage as appellees claim was lost, they placing it as high as 10,000 tons, since a large percentage of this loss was occasioned by the Black Diamond Mining Company. The verdict of $3,000.00 in this case is equivalent to 24,000 tons of coal at 12½ cents a ton, the reserved royalty. From what we have said, the loss proven by appellees and chargeable to appellant under their evidence falls far short of this mark. This being so, it follows that the verdict is grossly excessive; for which reason the case will have to be reversed.

With regard to appellant's complaints of the instructions, they are well founded, because in them the court assumed that the methods of mining adopted by appellant were improper methods. There was a sharp issue

of fact on this point, for which reason the court had no right as a matter of law to assume that appellant's methods were improper. On the next trial the court should simplify these instructions by submitting to the jury only the question whether the appellant operated this coal mine in a reasonably prudent and skillful manner, and, if not, whether the failure to do so had caused any coal to be lost, and, if so, to what extent.

In view of the fact that there must be another trial, the question whether the verdict before us is flagrantly against the evidence is not passed on.

Wherefore the judgment is reversed, with instructions to grant the appellant a new trial in conformity with this opinion.